FILED
2/27/2023 5:49 PM
Kelly Ashmore
District Clerk
Grayson County

CV-23-0267

**CAUSE NO. _____**

| | | |
|---|---|---|
| **WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE, ON BEHALF OF THE REGISTERED HOLDERS OF CSAIL 2018-CX11 COMMERCIAL MORTGAGE TRUST, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2018-CX11,** | § § § § § § § § § | **IN THE DISTRICT COURT** |
| *PLAINTIFF,* | § § | **GRAYSON COUNTY, TEXAS** |
| v. | § § | |
| **APEX CIRCLE LLC,** | § § | |
| *DEFENDANT.* | § § | 15th ____ **JUDICIAL DISTRICT** |

**PLAINTIFF'S VERIFIED ORIGINAL PETITION, AGREED APPLICATION FOR APPOINTMENT OF TEMPORARY RECEIVER, AND REQUEST FOR EMERGENCY CONSIDERATION**

Plaintiff Wells Fargo Bank, National Association, as Trustee, on behalf of the Registered Holders of CSAIL 2018-CX11 Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2018-CX11 ("**Lender**"), acting by and through Special Servicer, files this Verified Original Petition, Agreed Application for Appointment of Temporary Receiver, and Request for Emergency Consideration, and shows as follows:[1]

**I.**
**NATURE OF THE ACTION**

1.     Lender seeks the ***emergency*** appointment of a receiver to temporarily take possession of and operate the Circle Apartment Complex, 1527 South Austin Avenue, Denison, Texas 75020 (as further described in the applicable Deed of Trust, the "**Property**"). The Property

---

[1]     Capitalized terms not immediately defined are defined below.

**PLAINTIFF'S VERIFIED ORIGINAL PETITION, AGREED APPLICATION FOR APPOINTMENT OF TEMPORARY RECEIVER, AND REQUEST FOR EMERGENCY CONSIDERATION – PAGE 1**

secures repayment to Lender of a multi-million dollar commercial loan, which was assumed by Defendant Apex Circle LLC ("**Borrower**").

2.      *This is an emergency because Lender has just learned that Borrower's neglect and waste of the Property has caused the City of Denison, as the City of Sherman is already doing in a related case, to consider seeking permission to exercise its police power to condemn the Property, which is Lender's only collateral. Lender is a REMIC Trust that has a fiduciary obligation to protect the collateral on behalf of its investors. Lender's REMIC status means that it is very unlikely to be permitted to rebuild demolished property. But Lender's REMIC status also means that it is well funded and duty bound to institute this emergency request for a receiver, which is the only remedy that balances the equities of all affected parties because it does all of the following: (i) immediately removes Borrower from control; (ii) allows Lender to secure the Property by making protective advances without becoming exposed to mortgagee-in-possession liability issues; (iii) allows the City of Denison the best chance to recoup costs that it has already spent on the Property; and (iv) allows the City of Denison and Lender to work together to efficiently maximize the value of the Property. The City of Denison, who is in full agreement with Lender's receivership plan, wishes to testify at any receivership hearing, if necessary.*

3.      The Court should immediately appoint a receiver for the Property because Borrower's repeated and continuous defaults subject the Property to imminent and irreparable harm. As an initial matter, Borrower is financially incapable of operating the Property and paying related obligations as they become due. Borrower has not made a single payment on the loan since

November 2022. And, due to its failure to pay contractors, utility companies, and other vendors, Borrower has permitted liens, totaling approximately $450,000, to be filed against the Property.[2]

4.　　　Additionally, Borrower has committed serious waste and serial acts of mismanagement at the Property. To be sure, on February 15, 2023, Lender received a copy of a six-page "Notice of Violations" detailing myriad problems at the Property that the City of Denison discovered.[3] Borrower's waste includes, among other things, all of the following:

- Multiple windows and door frames are not weather tight.
- Multiple areas of exterior surfaces have flaking or chipping paint.
- Roofs are in serious states of disrepair.
- There is accumulation of animal waste inside and outside of units.
- There are multiple holes in the walls, floors, and ceilings of units.
- There are many leaking fixtures and other water intrusion issues.
- There are unsecured entry doors.
- There is visible pest/vermin infestation.
- Smoke detectors are missing.
- Light switch covers are missing and live wiring is exposed.
- Numerous windows are broken.
- Mold growth has accumulated.
- There is deteriorated weather proofing on staircases, walkways, and railings.
- Fire extinguishers are not present.
- Sprinkler systems are not operable.
- The HVAC system is in a serious state of disrepair.
- Human waste is present in some of the units.
- There is a sewer leak in the mailbox area.
- There is exposed wiring between buildings two and three.

---

[2]　　　Liens include, at a minimum, all of the following: (i) Riggs Contracting LLC for $8,645; (ii) El Lider LLC for $16,110.54; (iii) Reliant Energy Retail Services LLC for $239,839.15 (first abstracted judgment); and (iv) Reliant Energy Retail Services LLC for $183,209.18 (second abstracted judgment).

[3]　　　*See* **Exhibit 1**, a true and correct copy of the February 15, 2023 Notice of Violations, which is incorporated herein by this reference.

- Borrower has not caused the fire alarm to be inspected since January 2020.

5.    Although it is required to keep Lender appraised of all issues impacting the Property, Borrower actively concealed the dire state of the Property from Lender. Less than a month ago, Lender discovered the numerous liens pending against the Property on its own in connection with a title update. And, just this week, Lender discovered the myriad waste at the property in connection with a communication from the City of Denison. Lender immediately scheduled a meeting with the City of Denison to discuss a plan to utilize a receiver to immediately remove Borrower from the Property and permit Lender to make protective advances to secure the Property, which is its primary collateral. Lender met with the City of Denison on February 24, 2023. And, at that meeting, the City of Denison stated that (i) the Property was in serious jeopardy of being condemned; and (ii) Borrower has failed on multiple occasions to respond to criminal citations concerning the Property.[4]

6.    The City of Denison is understandably concerned about both the Property and Borrower. The Lender shares the City's concerns, is unable to foreclose due to the potential liability associated with the Property due to Borrower's conduct, and must find a path forward that fulfils the duty it owes to its investors to attempt to maximize the value of its secured collateral, namely the Property. The only viable path forward is immediate appointment of a receiver.

7.    On the one hand, appointment of an agreed receiver will (i) immediately remove Borrower from control; (ii) allow Lender to secure the Property by making protective advances without becoming exposed to mortgagee-in-possession liability issues; (iii) prevent the City and Lender from incurring the significant expense and time associated with future litigation; and (iv)

---

[4]    *See* **Exhibit 8**, a true and correct copy of the criminal history report for Borrower provided by the City of Denison, which is incorporated herein by this reference. Lender requests that the Court take judicial notice of this document, which was issued by the City of Denison.

allow the City and Lender to work together to efficiently maximize the value of the Property. On the other hand, failure to appoint an agreed receiver will cause all parties to incur significant expenses associated with immediate litigation.

8.     Finally, the Court should appoint a temporary receiver for the Property because Borrower expressly agreed in the Loan Documents that a receiver should be appointed. Consequently, the Court should appoint a temporary receiver to stabilize and protect the Property pending a future sale or other disposition of the Property.

## II.
## DISCOVERY LEVEL

9.     Lender intends to conduct discovery under Texas Rule of Civil Procedure 190.3 (Level 2).

## III.
## PARTIES AND SERVICE

10.     Lender is a trustee on behalf of a trust that has elected REMIC tax classification. For purposes of the action(s) described herein, Lender is acting by and through Special Servicer.[5] Lender may be served with any notice or pleadings in this action through its undersigned attorneys of record.

11.     Borrower, again Defendant Apex Circle LLC, is a Delaware limited liability company that may be served with process through its registered agent, VCorp Services, LLC, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

---

[5]     "**Special Servicer**" means Argentic Services Company LP, a Delaware limited partnership, not individually but solely in its authorized capacity as special servicer pursuant to that certain Pooling and Servicing Agreement, dated April 1, 2018.

## IV.
## JURISDICTION AND VENUE

12.      This Court has subject matter jurisdiction over this matter because it involves commercial improved real property located in Grayson County, Texas.  Venue of this action is proper in Grayson County, Texas, pursuant to Texas Civil Practice and Remedies Code Section 15.011 and Section 15.002(a)(1).  Borrower is subject to personal jurisdiction in Texas because it conducts business in Texas and because the claims in this lawsuit arise out of Borrower's contacts with Texas.

## V.
## BACKGROUND FACTS

### A.    THE SECURED INDEBTEDNESS

13.      On November 28, 2017, Circle Property Management LLC ("**Original Borrower**"), as borrower, and Natixis Real Estate Capital LLC ("**Original Lender**"), as lender, entered into that certain loan agreement ("**Loan Agreement**"), which contains the terms and provisions of the commercial real estate loan (the "**Loan**") made by Original Lender to Original Borrower.[6]  The Loan is evidenced by that certain Promissory Note (as amended and/or assigned, the "**Note**"), dated November 28, 2017, executed by Original Borrower, as maker, payable to the order of Original Lender, as payee, in the original principal amount of $2,925,000.[7]  The proceeds of the funds advanced pursuant to the Note were used in connection with the Property, which includes all of the real property, personal property, and general intangibles described in the Deed of Trust.

---

[6]      *See* **Exhibit 2**, a true and correct copy of the Loan Agreement, which is incorporated herein by this reference.

[7]      *See* **Exhibit 3**, a true and correct copy of the Note (and affixed allonges), which is incorporated herein by this reference.

14.     Repayment of the Note is secured by, among other things, the liens, security interests, terms, and provisions contained within that certain Deed of Trust, Assignment of Leases and Rents, and Security Agreement (as amended and/or modified, the "**Deed of Trust**"), dated effective November 28, 2017, executed and delivered by Original Borrower, as trustor, to Theresa B. Lyons, as trustee, for the benefit of the Original Lender, as beneficiary, recorded as Instrument No. 2017-27128 in the Real Property Records in Grayson County, Texas.[8]

15.     The Loan Agreement, the Note, the Deed of Trust, and any and all other documents executed in connection therewith and/or relating in any way thereto are referred to hereinafter either individually, or collectively, as the "**Loan Documents**."

## B.     ASSIGNMENT TO LENDER OF THE LOAN AND THE LOAN DOCUMENTS

16.     Pursuant to a series of endorsements, assignments, and/or transfers, Lender and Borrower are the current parties to the Loan Documents.[9]

## C.     BORROWER'S PAYMENT DEFAULTS

17.     Section 8.1(a) of the Loan Agreement states that "[a]n Event of Default shall exist with respect to the Loan if . . . any portion of the Debt is not paid when due . . . ." Because Borrower has not made a single payment on the Loan since November 2022, on or about February 14, 2023, Lender sent Borrower a letter, which (i) notified Borrower of its payment defaults; (ii) notified Borrower that the maturity date of the Note was accelerated; and (iii) demanded that the Borrower immediately pay all amounts due and owing under the Loan Documents.[10]  To date Borrower has not paid what it owes.

---

[8]      *See* **Exhibit 4**, a true and correct copy of the Deed of Trust, which is incorporated herein by this reference.

[9]      *See* **Exhibit 5**, which contains true and correct copies of the documents assigning the Loan Documents to Lender and Borrower.

[10]      *See* **Exhibit 6**, a true and correct copy of the January 25, 2023 Notice of Acceleration, which is incorporated herein by this reference.

18.     Because of Borrower's longstanding payment defaults on the multi-million dollar Loan, the Court should appoint a receiver forthwith.  Borrower's insolvency is yet another reason why the Court should appoint a receiver.

## D.     BORROWER'S INSOLVENCY DEFAULTS

19.     Section 8.1(f) states that an Event of Default occurs if Borrower is generally not paying its debts as they become due.  And, according to Texas Business and Commerce Code Section 24.003(b), "a debtor who is generally not paying the debtor's debts as they become due is presumed to be insolvent."  Payment obligations under the Loan Documents are debts like any other.  Borrower has failed, on multiple occasions, to timely make such payments.  Moreover, Borrower has permitted liens, totaling approximately $450,000, to be filed against the Property.[11] In short, the Court should also appoint a receiver because Borrower is insolvent.

## E.     BORROWER'S WASTE, MISMANAGEMENT, AND REPORTING DEFAULTS

20.     Section 8.1(i) states that an Event of Default occurs if Borrower either commits physical waste of the Property or permits "the actual or threatened alteration, improvement, demolition or removal of all or any portion of the [Property's] Improvements without the prior written consent of Lender."  Borrower has committed physical waste of the Property by, among other things, causing all of the following conditions at the Property:

- Multiple windows and door frames are not weather tight.
- Multiple areas of exterior surfaces have flaking or chipping paint.
- Roofs are in serious states of disrepair.
- There is accumulation of animal waste inside and outside of units.
- There are multiple holes in the walls, floors, and ceilings of units.
- There are many leaking fixtures and other water intrusion issues.

---

[11]     Failure to pay mechanic's liens is also a default pursuant to Section 10.1(f) of the Loan Agreement.  The list of the liens that Lender recently discovered is set forth in footnote two.

- There are unsecured entry doors.

- There is visible pest/vermin infestation.

- Smoke detectors are missing.

- Light switch covers are missing and live wiring is exposed.

- Numerous windows are broken.

- Mold growth has accumulated.

- There is deteriorated weather proofing on staircases, walkways, and railings.

- Fire extinguishers are not present.

- Sprinkler systems are not operable.

- The HVAC system is in a serious state of disrepair.

- Human waste is present in some of the units.

- There is a sewer leak in the mailbox area.

- There is exposed wiring between buildings two and three.

- Borrower has not caused the fire alarm to be inspected since January 2020.

- On information and belief, Borrower has failed to respond to multiple criminal citations regarding the Property.

Borrower's physical waste of the Property has, in turn, led the City of Denison to consider instituting proceedings seeking permission to exercise its police power and immediately condemn all structural improvements associated with the Circle Apartments. These defaults, standing alone, necessitate the immediate appointment of a receiver.

21. But Borrower compounded the emergency surrounding its waste by failing to timely report any of it to Lender, which constitutes yet another Event of Default under Section 8.1(f) of the Loan Agreement.[12]

22. As soon as Lender discovered the myriad defaults committed by Borrower, it began pursuing the emergency appointment of a receiver, which is the only remedy that strikes the

---

[12] In addition to its failure to abide by its reporting obligations, it does not appear that Borrower has actively pursued any insurance claim regarding the myriad damage to the Property. Although Lender is still investigating this issue, it may constitute yet another material Event of Default pursuant to, among other things, Section 10.1(j) of the Loan Agreement.

appropriate balance of equities between all affected parties.

**F.    CONTRACTUAL RIGHT TO APPOINTMENT OF RECEIVER**

23.    Via Section 10(a)(vii) of the Deed of Trust, Borrower expressly agreed that, upon the occurrence of an Event of Default, Lender may "apply for the appointment of a . . . receiver . . . without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of Borrower, any guarantor or indemnitor under the Loan or any other Person liable for the payment of the Debt." It is undisputed that Borrower's myriad defaults occurred and are continuing. Borrower's clear and unambiguous agreement to appointment of a receiver is enforceable.[13] And, even if consent to appointment of a receiver is not dispositive, it is still a factor that weighs heavily in favor of appointing a receiver.[14] Again, Borrower has consented to appointment of a receiver.

24.    Because Borrower's myriad defaults exist under the Loan Documents and are continuing, and because Borrower unambiguously agreed that Lender could seek and obtain the appointment of a receiver upon an Event of Default, Lender is contractually entitled to the appointment of a receiver for the Property.

---

[13]    *See Riverside Properties v. Teachers Ins. & Annuity Ass'n of America*, 590 S.W.2d 736, 738 (Tex. Civ. App.—Houston [14th Dist.] 1979, no writ) (holding that provisions in deed of trust and security agreements calling for appointment of a receiver pending foreclosure, while not binding on the court as a matter of law, were adequate to support a trial court's order appointing receiver); *Fannie Mae v. U.S. Property Solutions, LLC*, Cause No. 08-3588, 2009 WL 1172711, *1 (S.D. Tex. April 28, 2009) (noting that court appointed receiver "[b]ecause the Note explicitly provided for the appointment of a receiver in the event of default...."); *Franchise Loan Trust 1998-1 v. S&A Fee Properties SPE 2, LLC*, Cause No. 08-306, 2008 WL 4093620, *1 (E.D. Tex. Aug. 26, 2008).

[14]    *See Bank of America, National Association v. Quik-Way Foods of Dallas, Inc.*, Civil Action No. 3:10-CV-1932-L, 2011 WL 3156275, at *6 (N.D. Tex. July 25, 2011) (holding that parties' contractual agreement to receiver "bolsters" case for receiver's appointment); *see also New York Life Ins. Co. v. Watt West Inv. Corp.*, 755 F. Supp. 287, 292 (E.D. Cal. 1991) (holding that consent by the parties to appointment of a receiver in a deed of trust is a factor that commands "great weight," but is not dispositive).

### G. BASIS FOR APPOINTMENT OF RECEIVER INDEPENDENT OF LOAN DOCUMENTS

25.     In addition to Lender's contractual right to the appointment of a receiver, the appointment is supported by concepts of equity and the tenets of Texas law.  Under Texas Civil Practice and Remedies Code ("**TCPRC**") Section 64.001(a)(2) and Subsection (b), a receiver may be appointed for property on the application of a creditor, such as Lender, if (i) the creditor has a probable interest in or right to the property; and (ii) the property is in danger of being lost, removed, or materially injured.  Under TCRP Section 64.001(a)(6), the Court may also appoint a receiver "in any other case in which a receiver may be appointed under the rules of equity."

26.     Here, the requirements of Texas Civil Practice and Remedies Code Section 64.001 receivership test are met because Borrower's insolvency, waste, mismanagement, and failure to keep Lender appraised of the status of its secured collateral show that the Property is not being cared for and is in imminent danger of being lost or damaged.

27.     Furthermore, no less drastic equitable remedies exist other than appointing a receiver because the damage to the Property cannot be remedied with money damages alone or by any equitable remedy other than a receivership.  *See Russ-Ann Development, Inc. v. ECGC, Inc.*, 322 S.W.3d 921, 927 (Tex. App.—Tyler 2007, no pet.) ("In Texas, the potential loss of rights in real property is a probable, imminent, and irreparable injury that qualifies a party for a temporary injunction.").  Thus, equity requires the appointment of a receiver.

28.     The potential deterioration of the Property (Lender's collateral), and the avoidance by Lender of mortgagee-in-possession liability issues, mandate that a suitable temporary receiver be appointed that is independent of Borrower to operate and manage the Property in a professional manner, to oversee and address repairs at the Property, and to seek to resolve any possible issues with vendors, tenants, and/or governmental entities.  Once appointed, the receiver will gain access to address competent operation and maintenance of the Property.

29.     Borrower will not suffer harm if this Court appoints a receiver.  First, Borrower has already agreed to the appointment of a receiver for the Property in the Loan Documents.  Second, the appointment of a receiver for the Property will merely remove some of Borrower's responsibilities and authority, and allow Lender to address the deferred maintenance that exists at the Property without becoming exposed to mortgagee-in-possession liability issues.  Ultimately, the harm suffered by Lender by not appointing a receiver outweighs the harm to Borrower from appointment of the receiver.

30.     Finally, Lender will likely succeed in the underlying actions for breach of contract and waste, as it is undisputed that Borrower's myriad defaults occurred and are continuing.

## VI.
## CAUSES OF ACTION AND REMEDIES

### A.     BREACH OF CONTRACT

31.     Lender incorporates by reference all of the paragraphs above and below to the extent they are consistent herewith.

32.     Borrower has breached its agreement with, and injured, Lender.  As referenced above, Borrower has failed to pay all amounts due and owing, is presumed insolvent, has permitted numerous liens to be filed, has committed serial acts of waste and mismanagement, and has failed to keep Lender appraised of the dire status of the Property.  Accordingly, Lender is entitled to pursue all remedies available to the Lender under the Loan Documents, at law, and/or in equity, and must do so at this time to protect the value of Lender's collateral (the Property).

### B.     WASTE

33.     Lender incorporates by reference all of the paragraphs above and below to the extent they are consistent herewith.

34. Borrower committed waste of the Property, which is Lender's secured collateral, by recklessly and/or intentionally failing to properly inspect, maintain, secure, and repair the Property, which caused the tremendous damage detailed herein. Borrower's misconduct has disrupted tenants and the City of Denison, which has further injured the Property's reputation and ability to attract quality tenants, and which has also seriously jeopardized Lender's opportunity to maximize the Property's value. This contributed to Borrower's financial distress and loan defaults, all of which has caused substantial damage to Lender

## C.    ATTORNEYS' FEES

35. Lender incorporates by reference all of the paragraphs above and below to the extent they are consistent herewith.

36. Because of Borrower's actions, Lender has found it necessary to engage the law firm of Holland & Knight LLP to prosecute this action and to protect its rights. Pursuant to the terms of the Loan Documents and TCPRC Section 38.001, *et seq.*, Lender is entitled to recover its reasonable and necessary attorneys' fees incurred in the prosecution of this action.

### VII.
### APPLICATION FOR APPOINTMENT OF TEMPORARY RECEIVER

37. Lender incorporates by reference all of the paragraphs above and below to the extent they are consistent herewith.

38. Pleading further, and without waiving the foregoing, pursuant to Section 64.001, *et seq.* of the TCPRC, Lender seeks the appointment of a temporary receiver to take possession and control of the Property.

39. Under Section 10(a)(vii) of the Deed of Trust, Lender has the contractual right to the appointment of a receiver.

40.     Furthermore, notwithstanding the contractual agreement of Borrower to the appointment of a receiver, Lender is also entitled to the appointment of a receiver on statutory and equitable grounds.

41.     Lender is a secured creditor of Borrower, and the appointment of a temporary receiver facilitates subjecting the Property to Lender's secured claim, pending a sale or foreclosure of the Property.

42.     Lender specifically prays for the following relief:

   a.   **Appointment of Chris Neilson as Receiver.** The Court should appoint Chris Neilson of Trigild Texas, Inc., 4131 North Central Expressway, Suite 775, Dallas, Texas 75204, (214) 766-9272, chris.neilson@trigild.com, as receiver ("**Receiver**") for the Property. Neither Mr. Neilson nor Trigild is a party, attorney, or other person interested in this action. Mr. Neilson is a citizen of Texas and qualified Texas voter and is otherwise qualified to serve as receiver.[15] Mr. Neilson and his company are widely-respected and experienced property managers that have been appointed receiver by Texas courts for numerous commercial properties in Texas. Thus, Mr. Neilson is well equipped to preserve the value of all of the Property as Lender's collateral securing repayment of the Loan;

   b.   **Receiver's Exclusive and Complete Control over the Property.** Receiver be allowed to take and have complete and exclusive control and possession of the Property, together with any and all bank accounts, credit card receipts, demand deposits, reimbursement rights, bank deposits, security deposits and all other forms of accounts, accounts receivable, payment rights, cash and cash equivalents, along with any and all information necessary to operate the Property, including but not limited to all security codes, combinations, passwords and other access codes and all other collateral securing the indebtedness owed to Lender;

   c.   **Items to be Delivered to Receiver by Borrower.** Borrower and all persons acting under its direction be ordered to deliver possession to Receiver, without any right of offset or recoupment, of the Property and all other collateral securing the indebtedness owed to Lender, including but not limited to (to the extent in the possession or control of the Borrower or the Borrower's agents): (1) cash collateral (whether consisting of cash on hand, cash in any and all bank accounts or other accounts, all rights to security deposits, including, but not limited to, amounts that Borrower may have

---

[15]     *See* **Exhibit 7**, which is a brief description of Mr. Neilson's background and his resume and a description of his qualifications to serve as a receiver for commercial properties in the State of Texas.

deposited with utility companies, all rights to unearned insurance premiums or claim proceeds, or pre-payments of any kind, and all other cash and cash equivalents); (2) all keys; (3) all loans and communications and correspondence files relating thereto; (4) security deposits, rent, prepaid rent, other sums relating to the use, enjoyment, possession, improvement or occupancy of all or any part of the Property and any accounts of any of the foregoing; (5) a current list of the occupants of the Property, including the complete tenant ledgers with respect to each occupant; (6) complete tenant files and tenant histories; (7) any and all accounts receivable and accounts payable reports; (8) any and all contracts in effect with respect to the Property and all communications and correspondence pertinent thereto, including, but not limited to, all service contracts and warranty information and contracts with vendors who provide or have provided services at the Property; (9) any and all files relating to contracts, bids or other materials relating to any contractor work at the Property; (10) any and all payroll records, employee files, applications and other materials relevant to those persons employed at the Property; (11) any and all insurance policies covering the Property, and all communications and correspondence pertinent thereto; (12) any and all bank statements and records relating to any accounts associated with the Property; (13) any and all records relating to pending or current litigation; and (14) any and all other records pertaining to the operation and management of the Property requested by Receiver;

d.    **Borrower's Actions**.  Borrower and any persons acting under Borrower's direction be (1) directed to deliver the Property to Receiver; (2) enjoined from in any way disturbing the possession of the Property or other property that is the subject of the order appointing Receiver; (3) prohibited and restrained from disposing of, dissipating, mishandling or misappropriating any of the Property or other such property; (4) prohibited from taking any actions that would, directly or indirectly, have an adverse impact on the value of the Property; (5) prohibited and restrained from canceling, reducing or modifying any and all insurance coverage in existence with respect to the Property; and (6) prohibited and restrained from collecting any rents or other sums, all until further order of the Court;

e.    **Receiver's Right to Prevent Waste of, and to Preserve, the Property**. Effective immediately, Receiver be ordered to take any and all actions Receiver deems reasonable and appropriate to prevent waste to the Property and to preserve, secure, manage, maintain and safeguard the Property and all other forms of property to which Receiver is entitled to take possession and control under the order appointing Receiver;

f.    **Receiver Vested with the Information Related to the Property**. Receiver be vested with the books and records of Borrower with respect to operation of the Property and other property subject hereto, including any and all information related to:  (1) rent rolls and leases affecting the Property, including, but not limited to, leases for current and former tenants

and a detailed accounting of all security deposits for current and former tenants; (2) amounts paid by lessees and other obligors of Borrower; (3) liens, encumbrances and other interests against or affecting the Property; (4) property taxes owed and previously paid; (5) all types of insurance affecting the Property, including but not limited to, any and all information regarding any pending or settled insurance claims; (6) plans, specifications, surveys and drawings of the Property, including, but not limited to, building and individual floor plans, elevator and/or escalator plans and mechanical system plans; (7) any and all maintenance logs and repair records for all systems in place at the Property; (8) access codes to any of the Property; (9) all operating, income, financial and monthly statements related in any way to the Property, including but not limited to, any and all general ledgers, balance sheets, check registers, budgets and monthly billings; (10) all current account numbers for all utility companies; (11) any and all current marketing materials and information, including, but not limited to, any prospect reports; and (12) all other aspects of the Property;

g.    **Receiver's Right to Manage, Maintain, and Operate the Property**. Receiver be authorized to manage, maintain, operate, lease and market the Property and to employ such managers, agents, employees, brokers, accountants and attorneys as may in his commercially reasonable judgment be advisable or necessary in the management, conduct, control or custody of the affairs of Borrower and its assets, be authorized to make payments and disbursements in the ordinary course of business and to make such payments and disbursements as may be needed and proper for the preservation of the Property and other property of Borrower; and be authorized to pay net income from the Property to Lender, in reduction of the indebtedness owed to Lender by Borrower. Receiver may, with Lender's approval, replace existing property management if the Receiver determines, in the exercise of his professional discretion, that doing so is in the best interest of the Property. In the event that Receiver decides, with Lender's consent, to replace existing property management, Receiver is authorized to terminate the agreement with existing property management, without regard to any notice period, and to engage a professional property management company of his choosing, including Trigild or an affiliate thereof. Receiver will be compensated monthly at a rate of $300 per hour plus reimbursement of all out-of-pocket expenses. Receiver is entitled to a minimum of $3,000 per month.

h.    **Receiver Authorized to Sell the Property**. Receiver be authorized, (1) with prior written approval of the Court and Lender, to sell all or a portion of the Property and other collateral and, in connection with such sale, to facilitate an assumption of the Loan, and execute on Borrower's behalf any necessary documents in connection with any sale or any sale and assumption, and this Court waives any requirement that a sale by the Receiver (after obtaining such prior written approval of the Court and Lender) be further confirmed by this Court, and (2) to reasonably cooperate

with requests made by Lender that relate to a sale by Lender to a third party of the Loan (and the Loan Documents). Nothing stated herein shall be deemed to prejudice or prevent Lender from conducting a non-judicial foreclosure sale of the Property by a substitute trustee or accepting a deed-in-lieu of foreclosure from Borrower for the Property without prior approval from this Court;

i. **Receiver's Right to Collect Amounts Due**. Receiver be authorized to receive and collect any and all sums due or owing to Borrower in any manner related to the Property (with the exception of any insurance premium refund, which shall be refunded to Borrower, expressly subject to the sentence at the end of this paragraph beginning with the word "Notwithstanding"), whether the same are now due or shall hereafter become due and owing, to deposit such sums into an account established and maintained by Receiver, and to expend such sums on the operation and management of the Property in the ordinary course of its business. Notwithstanding the foregoing, Borrower's right to refunded insurance premiums is expressly subject to Lender's rights under the Loan Documents and nothing in this paragraph is intended to, nor shall be construed to, waive any of Lender's rights with respect to insurance premiums;

j. **Legal Actions Related to the Property**. Receiver be authorized to institute, prosecute, defend, compromise and/or intervene in or become a party to such actions or proceedings in state or federal courts necessary for the protection, maintenance and preservation of the assets of Borrower and to carry out the terms of the Court's order appointing Receiver, including but not limited to, the collection of rents and other amounts now or hereafter becoming due, the removal of tenants or other persons from the Property and/or the defense against any action brought against Receiver acting in such capacity;

k. **Insurance**. Receiver and/or Receiver's management company is authorized to maintain appropriate property insurance for the Property, including public general liability insurance, worker's compensation insurance, fire and extended coverage insurance, employer's liability insurance, employment practices insurance, liquor liability insurance, non-owned auto umbrella insurance, burglary and theft insurance, and other types of insurance normally obtained in connection with the operation and management of the Property; and is authorized to continue any current policies in place and to purchase further insurance as Receiver deems appropriate; Receiver and Receiver's management company shall be named insureds on all general liability policies; notwithstanding anything contrary in this subprovision, Receiver may cancel any existing insurance policy for the Property, and any refund of premiums shall be paid to the Receiver;

l. **Payment of Property Taxes; Preparation and Filing of Tax Returns for the Property**. Receiver be authorized to (1) pay all current and past due

real estate taxes, personal property taxes and any other taxes and assessments against the Property; and (2) prepare and file tax returns with respect to the Property, and other property subject hereto, as may be required by law, provided, however, Receiver is not responsible for the preparation of tax returns for Borrower or any of its affiliates;

m. **Property Protection Advances from Lender**. Receiver and Lender be authorized to enter into transactions by which Lender may fund to Receiver, in Lender's sole and absolute discretion, property protection advances (on a nonrecourse basis as to Receiver) to enable Receiver to perform his duties hereunder, which may be advanced pursuant to the applicable pooling and servicing agreement and the Loan Documents, and will be secured by the liens, security interests, terms and provisions contained within the Loan Documents;

n. **Leases; Payment of Utilities; Maintenance of the Property; Compliance with Laws**. Receiver be authorized to: (1) negotiate and enter into new leases, occupancy agreements and contracts in the ordinary course of the business of the Property; (2) modify existing leases, occupancy agreements and contracts in the ordinary course of the business of the Property; (3) pay all utilities, expenses and other obligations secured by the Property or which may give rise to liens on the Property, and all other outstanding obligations to suppliers and service providers in the ordinary course of business, including obligations incurred prior to the commencement of the receivership, so long as Receiver has determined that it is prudent to do so in order to maintain business relationships that are beneficial to the conduct of the receivership; (4) make repairs necessary to the maintenance of the Property in order to preserve the Property in the ordinary course of business; and (5) comply with all requirements and regulations applicable to the Property. Prior to effectuating any proposed lease or proposed lease modification, the Receiver shall provide the Court and the Borrower with written notice regarding the terms of such lease or lease modification and, within ten (10) business days after receipt of such notice, any party may object to the terms of the proposed lease or lease modification. In the absence of such objection or further order from the Court, the Receiver shall, in its sole discretion, be free to effectuate such proposed lease or lease modification;

o. **Application of Income from the Property**. Receiver be permitted to apply income from the Property, subject to the lien and security interest rights of Lender, as follows: (1) Receiver's approved fees and expenses; (2) the current operating expenses of the receivership in the ordinary course of business; (3) the obligations owed to Lender under the Loan Documents; and (4) such other obligations incurred;

p. **Receiver's Cash on Hand**. Receiver be permitted to maintain sufficient cash on hand to enable Receiver to meet those expenses, the payment of

which is authorized herein, in an amount to be agreed to between Receiver and Lender;

q. **Payment of Property Expenses**. Receiver be permitted to pay all expenses incurred with regard to the Property in the normal and ordinary course of business of the Property by Receiver on or after the date Receiver is appointed. Neither Receiver nor Lender shall be liable for any expenses incurred with regard to the Property prior to Receiver taking possession of the Property, nor shall Receiver or Lender be required to use any rents or additional funds advanced by Lender or other revenues collected after Receiver takes possession of the Property in payment of such expenses. Notwithstanding the foregoing, Receiver may, in Receiver's sole and absolute discretion, pay those expenses that were incurred in the normal and ordinary course of business of the Property and that were incurred prior to Receiver taking possession of the Property, if, and only if, the payment of any such pre-existing expenses is necessary and critical to the ongoing operation of the Property (e.g., utilities). It shall be incumbent upon Receiver, in Receiver's sole and absolute discretion, to make a determination as to which expenses, if any, incurred prior to the Receiver's taking possession of the Property, were incurred in the normal and ordinary course of business and the payment of which is necessary and critical to the ongoing operation of the Property. Receiver's determination of such is binding on the parties hereto and will not be overturned by this Court. Otherwise, no pre-existing expenses shall be paid by Receiver without written approval by Lender or further order of this Court;

r. **Receiver's Liability**. Except in the event of gross negligence, willful misconduct, or actions in violation of orders of the Court, Receiver have no personal liability for any obligations incurred in the course of the receivership, any and all such liabilities being limited to the assets (including the cash and cash equivalents) received and generated by Receiver in the course of the receivership, subject to the existing lien of Lender;

s. **Receiver's Authority**. The authority granted to Receiver be self-executing; and

t. **General Authority**. The Receiver be permitted to take any and all actions necessary to preserve the income to and value of the Property; and to perform any other acts in regard to the Property as authorized by this Court.

## VIII.
## BONDS

43. Lender and the Receiver are willing to post bonds in connection with appointment

of a Receiver, as directed by the Court.

# IX.
## CONDITIONS PRECEDENT

44.     Lender has satisfied all conditions precedent for bringing this action.

# X.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Lender respectfully requests that:

    a.     Borrower be cited to appear and answer herein;

    b.     Chris Neilson be appointed receiver pursuant to Chapter 64 of the TCPRC and be vested with all necessary authority to act on behalf of Borrower and any agent acting on its behalf (including any property manager), access and administer all funds and accounts at all banks and other financial institutions owned or controlled by Borrower or any agent acting on its behalf, and

    c.     On final trial hereof, Lender have judgment against Borrower for its actual damages as provided in the Loan Documents and interest to the extent allowed by applicable law, together with its reasonable and necessary attorneys' fees and all costs of court, and such other and further relief, both general and special, at law or in equity, to which Lender may be justly entitled.

45.     That the Court grant any other such, general, or different relief to which Lender may be entitled.

Respectfully submitted,

By: _____

Christopher L. Chauvin
Texas Bar No. 24045644
chris.chauvin@hklaw.com
Alexander T. Dimock
Texas Bar No. 24094628
alex.dimock@hklaw.com

HOLLAND & KNIGHT LLP
1722 Routh Street, Suite 1500
Dallas, Texas 75201
(214) 969-1700
(214) 969-1751 (facsimile)

ATTORNEYS FOR PLAINTIFF

### VERIFICATION BY DECLARATION

Pursuant to Texas Civil Practice and Remedies Code section 132.001, Bruce Rickert provides the following declaration:

I, Bruce Rickert, am over the age of eighteen, and I am legally competent to make this declaration, which is true and correct and based on my personal knowledge. I am an authorized signatory for Special Servicer, which is the Special Servicer of the Loan for Lender pursuant to that certain Pooling and Servicing Agreement dated April 1, 2018. It is in that capacity that I make this declaration.

I am one of the custodians of the books, records, and files of the Lender and Special Servicer that pertain to the Loan concerning the Property. I have personally worked on the books, records, and files, and as to the facts set forth in the foregoing Plaintiff's Verified Original Petition, Agreed Application for Appointment of Temporary Receiver, and Request for Emergency Consideration, and, except as to those facts directly attributed to Exhibits attached hereto or otherwise accredited, such facts set forth above are true and correct within my personal knowledge and/or knowledge derived from the business records of Lender and Special Servicer.

Exhibits one through six are true and correct copies of business records maintained in the ordinary course of business of Lender and Special Servicer.

My name is Bruce Rickert, my date of birth is March 2 , 1970, and my business address is 500 North Central Expressway, Suite 261, Dallas, Texas 75074.

I declare under penalty of perjury that the foregoing is true and correct.


_____
Bruce Rickert,
not in his individual or personal capacity, but solely
in his capacity as an authorized signatory for Special
Servicer pursuant to that certain Pooling and
Servicing Agreement dated April 1, 2018